**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Adam ROSEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 17, 2009.
Filed Dec. 28, 2009.

Jules Epstein, Philadelphia, for appellant.

Risa V. Ferman, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: PANELLA, POPOVICH, and COLVILLE *, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Adam Rosen appeals the judgment of sentence of life imprisonment entered on October 14, 2008, in the Court of Common Pleas of Montgomery County, for his conviction of first-degree murder following retrial. Appellant claims that the trial court erred by permitting expert

---

* Retired Senior Judge specially assigned to the Superior Court.

psychiatric testimony from his first trial to be used as impeachment evidence in his second trial. Appellant asserts that this error presented him with a *fait accompli* regarding his choice to testify in his own defense and, thereby, violated his right to present a proper defense. Upon review, we affirm.

¶ 2 The relevant procedural background of this case is as follows: Appellant was convicted of the first-degree murder of Hollie Rosen, his wife, and sentenced to life imprisonment on May 2, 2002.[1] Appellant filed a direct appeal to this Court, and we affirmed. *See Commonwealth v. Rosen*, 830 A.2d 1052 (Pa.Super.2003) (unpublished memorandum). Appellant filed a petition for allowance of appeal to our Supreme Court, which the Court denied. *Commonwealth v. Rosen*, 574 Pa. 765, 832 A.2d 436 (2003). Thereafter, Appellant filed a petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. The PCRA court denied relief. Appellant appealed to this Court, and we reversed the order of the PCRA court, finding that trial counsel was ineffective for failing to call character witnesses on Appellant's behalf. *Commonwealth v. Rosen*, 890 A.2d 1105 (Pa.Super.2005) (unpublished memorandum). Accordingly, we remanded the case to the trial court for a new trial.

¶ 3 Following remand, Appellant filed a motion *in limine* to preclude the admission at retrial of the expert psychiatric testimony that was admitted in Appellant's first trial. The trial court granted this motion in part and ruled that, as Appellant was not presenting a mental infirmity defense at retrial, the Commonwealth could not present the expert psychiatric testimony as substantive evidence in its case-in-chief, but the trial court permitted the Commonwealth to utilize the admissions of guilt by Appellant contained within the expert psychiatric testimony as impeachment evidence if Appellant testified on his own behalf. Appellant waived his right to a trial by jury, and, following a bench trial at which Appellant elected not to testify, the trial court convicted Appellant of first-degree murder. Thereafter, the trial court sentenced Appellant to life imprisonment. Appellant, in turn, filed post-sentence motions, which the trial court denied. After the denial of his post-sentence motions, Appellant filed a notice of appeal to this Court. The trial court ordered Appellant to file a concise statement of errors complained of on appeal, and he complied. The trial court then authored an opinion that addressed the issues presented in Appellant's concise statement.

■ ¶ 4 Appellant contends that, because he did not present a mental infirmity defense at his second trial, the conditional admission of the psychiatric expert witness evidence at his second trial violated both his Fifth Amendment right against self-incrimination and the psychiatrist-patient privilege. Appellant also contends that the psychiatric expert witness evidence was inadmissible because it was "indelibly stamped" with counsel's ineffective assistance from his first trial. Appellant contends that the trial court's evidentiary error deprived him of the ability to choose meaningfully to testify on his own behalf due to the certain admission of the aforementioned improperly-admitted evidence.

---

1. During his first trial, Appellant presented a mental infirmity defense, and, to support that defense, he was examined by Paul Fink, Psy.D. The Commonwealth presented Timothy Michals, Psy.D., as an expert psychiatric witness to rebut Dr. Fink's testimony. In formulating his opinion, Dr. Fink examined Appellant and the notes of Appellant's previous treating psychiatrists and psychologist. Dr. Michals examined Appellant and reviewed Dr. Fink's report.

¶ 5 We begin with the observation that Appellant's argument on appeal is unique, but we find that it is not without precedent in this Commonwealth. In *Commonwealth v. Harris*, 442 Pa.Super. 116, 658 A.2d 811, 814 (1995), the trial court concluded erroneously that Robert James Harris' hindering apprehension conviction was a *crimen falsi* offense and, therefore, could be introduced against him as impeachment evidence if he testified on his own behalf at his trial for aggravated assault. *See Harris*, 658 A.2d at 814. Harris did not testify at trial due to his fear of exposing this conviction to the jury. On appeal, we concluded that Harris suffered undue prejudice to his defense from the trial court's erroneous evidentiary ruling because the ruling deprived Harris of the ability to tell the jury his version of events, which stood in marked contrast to that of the victim, who was the Commonwealth's only eyewitness. *Id.*, 658 A.2d at 815. As the case turned entirely upon the credibility of the Commonwealth's witness versus the credibility of the witnesses for the defense, we concluded that the trial court's erroneous evidentiary ruling constituted prejudicial error because Harris' testimony could have formed the basis for his acquittal. *Id.*, 658 A.2d at 816.

¶ 6 The procedural posture of the present case is analogous to *Harris*. Although Appellant chose ultimately not to testify and risk the exposure of the expert psychiatric testimony to the finder of fact, we must, under *Harris*, review the propriety of the trial court's ruling to determine if any error improperly influenced Appellant's decision not to testify. Because this case rested entirely on the question of Appellant's state of mind at the time of the killing and because he was the only living eyewitness to the events, an erroneous evidentiary ruling that precluded Appellant's testimony, if made by the trial court, could not be considered harmless. *Harris*, 658

A.2d at 816. Accordingly, we turn to a review of the merits of Appellant's arguments.

¶ 7 We note first that, because Appellant did not present his ineffective assistance argument to the trial court in the first instance in a post-sentence motion, a record has not been devoted to that claim, and we may not review it. *See Commonwealth v. Davis*, 894 A.2d 151, 153 (Pa.Super.2006). Further, this claim was not considered at any point in the proceedings of Appellant's PCRA petition. Accordingly, we dismiss the claim. *Id.*, 894 A.2d at 153.

¶ 8 Appellant's underlying argument fails on its merits. As noted by the trial court, this case is controlled by our Supreme Court's holding in *Commonwealth v. Santiago*, 541 Pa. 188, 662 A.2d 610 (1995). In *Santiago*, Santiago was convicted of first-degree murder and sentenced to death. *Id.*, at 191, 662 A.2d at 611. Santiago presented a defense of insanity, which was supported by the expert psychiatric testimony of Dr. Robert Wettstein. *Id.*, at 194–95, 662 A.2d at 613. However, Dr. Wettstein's testimony also contained a statement by Santiago that admitted his involvement in the murder. *Id.*, at 195, 662 A.2d at 613. On automatic appeal to our Supreme Court, that conviction was overturned on the grounds that his right to counsel had been violated regarding a different offense, and the case was remanded to the trial court for retrial. *Id.*, at 192, 662 A.2d at 612. On retrial, the Commonwealth presented into evidence Dr. Wettstein's testimony from the first trial, which contained his recounting of Santiago's admission. *Id.*, at 195, 662 A.2d at 613. Santiago objected to the admission of this testimony on the grounds that, because he did not present an insanity defense at retrial, Dr. Wettstein's testimony was not

admissible. *Id.,* at 195–96, 662 A.2d at 613. Nevertheless, the trial court permitted the Commonwealth to present the expert psychiatric testimony over Santiago's objection. *Id.,* at 195–96, 662 A.2d at 613. Santiago was convicted and sentenced to death; on automatic appeal to our Supreme Court, he challenged the admissibility of Dr. Wettstein's testimony. *Id.,* at 195–96, 662 A.2d at 613.

¶ 9 Our Supreme Court held that Dr. Wettstein's testimony was admissible as *substantive evidence* of Santiago's guilt. *Santiago,* at 197, 662 A.2d at 614. The Court held that Santiago's presentation of Dr. Wettstein's testimony in his first trial was a voluntary disclosure. *Id.,* at 197, 662 A.2d at 614. As such, Santiago could not, at his second trial, avoid the consequences of the presentation of Dr. Wettstein's testimony at his first trial, specifically, the admission of guilt that was uncovered by the Commonwealth in its cross-examination of Dr. Wettstein. *Id.,* at 197, 662 A.2d at 614. Further, the Court reasoned that, because Santiago presented the testimony of Dr. Wettstein at his first trial, thereby waiving the privileged nature of his communications with Dr. Wettstein, he was foreclosed from reasserting the privilege at a second trial. *Id.,* at 198, 662 A.2d at 614–15 *(citing Commonwealth v. Boyle,* 498 Pa. 486, 497, 447 A.2d 250, 256 (1982) (holding that testimony from earlier trial may be introduced in Commonwealth's case against defendant regardless of whether defendant testifies in second proceeding; constitutional right against self-incrimination, as far as that testimony is concerned, is waived and cannot be reclaimed in any subsequent trial of same indictment)).

¶ 10 *Santiago* instructs that Appellant was foreclosed from challenging the admissibility of the psychiatric expert testimony from his second trial, even though he did not present an insanity or mental infirmity defense at his second trial. *See Santiago,* at 197, 662 A.2d at 614. One, like Appellant, who presents an insanity defense at trial effectively waives their right against self-incrimination and the psychiatrist-patient privilege as to the expert psychiatric testimony supporting that defense and the evidence presented by the Commonwealth to support its case-in-rebuttal. *Id.,* at 197, 662 A.2d at 614.[2] This principle is consonant with the general rule that a waiver of a constitutional right or privilege is permanent, and the right or privilege cannot be reasserted by the defendant to object to the use that is made of the formerly privileged communications. *See Commonwealth v. Chmiel,* 558 Pa. 478, 507, 738 A.2d 406, 422 (1999) (citations omitted). Such is the case here; Appellant exposed his liability to a future admission of the incriminating statements he made to both his and the Commonwealth's psychiatrists when preparing his insanity defense by presenting that defense at his first trial. *Santiago,* at 197, 662 A.2d at 614. Appellant's waiver cannot be undone at a second trial, despite the fact that he did not present an insanity defense at the second trial. *Id.,* at 197, 662 A.2d at 614; *see also Chmiel,* at 507, 738 A.2d at 422.

¶ 11 Giving great deference to Appellant's right against self-incrimination, the trial court exercised its discretion wisely to permit the Commonwealth to introduce Appellant's previous admissions to the psy-

---

**2.** Conversely, if the insanity defense is merely *explored* but not presented, the Commonwealth cannot introduce its rebuttal evidence, including any admissions by the defendant that may have been made by the defendant to the Commonwealth's expert psychiatric witness during compulsory examination. *See Santiago,* at 197 n. 7, 662 A.2d at 614 n. 7.

chiatric expert witnesses only as impeachment evidence if Appellant took the stand in his own defense at his second trial. As noted above, the trial court would have been well within its discretion to permit the Commonwealth to introduce this evidence as substantive evidence of Appellant's guilt. *See Santiago*, at 197, 662 A.2d at 614. Therefore, we are satisfied that the trial court's conditional admission of the psychiatric expert witness testimony from Appellant's trial was not erroneous. As such, we need not consider whether Appellant's right to choose to testify on his own behalf was vitiated by an evidentiary error on the part of the trial court because the trial court did not commit an evidentiary error by permitting the Commonwealth to use the expert psychiatric testimony as impeachment evidence in this case. *See Harris*, 658 A.2d at 816.

¶ 12 The thrust of Appellant's argument is that *Santiago* was either overruled by or severely limited in its application by our Supreme Court's holding in *Commonwealth v. Sartin*, 561 Pa. 522, 751 A.2d 1140 (2000). This argument is entirely without merit. *Sartin* holds that a defendant who explores mitigating psychiatric evidence in anticipation of the penalty phase of a capital murder trial must submit to examination by the Commonwealth's psychiatric expert in order to permit the Commonwealth the opportunity to rebut the mitigating evidence at the penalty phase. *Sartin*, at 528, 751 A.2d at 1143. The evidence obtained from the examination of the Commonwealth's expert can be used in such a situation only as rebuttal evidence at the penalty phase of trial and only as to the issues that have been impli-

cated by the defendant's psychiatric expert. *Id.*, at 528, 751 A.2d at 1143.

¶ 13 Unlike the case in *Sartin*, the psychiatric evidence presented by Appellant in his first trial was to support a mental infirmity defense, *i.e.*, to cast doubt upon his *guilt*. Therefore, as *Sartin* applies only to the Commonwealth's ability to counter psychiatric evidence obtained for mitigation purposes at the *penalty* phase of a capital trial, *Sartin* is inapplicable to the present case. *Sartin*, at 528, 751 A.2d at 1143. Moreover, far from countering the weight of *Santiago*, *Sartin*, in fact, enforces the holding of *Santiago* because it holds that the Commonwealth cannot present evidence obtained from a compulsory psychiatric evaluation at the penalty phase of trial unless the defendant first places the matter in issue by presenting psychiatric evidence as mitigating evidence on his own behalf at the penalty phase. *Id.*, at 528, 751 A.2d at 1143; *see also Santiago*, at 197 n. 7, 662 A.2d at 614 n. 7. In the present case, the trial court adhered to the spirit of *Sartin* by conditioning the Commonwealth's ability to introduce the psychiatric evidence presented by Appellant in his first trial to rebuttal evidence only in his second trial. *Sartin*, at 528, 751 A.2d at 1143. Consequently, Appellant's issue fails.

¶ 14 As Appellant's issue fails, we affirm the judgment of sentence of the trial court.

¶ 15 Judgment of sentence affirmed.